Paul, the final case for today, Jambalvo. May I proceed? Yes, counsel. State your appearance and you may proceed. May it please the court. I am Andrew Brzezinski and I represent the appellant Gabriele Giambalvo and I'd like to reserve two minutes for rebuttal. Very well. This case is critically different from this court's decision in Mayfield v. City of Mesa for these reasons. One, there was an immediate availability and rapid accessibility of a sign language interpreter via video remote interpreting accessible within minutes of need. Two, there were documented complete failures of Ms. Giambalvo's hearing which allowed her to not be able to communicate during material aspects of her processing and arrest and what those material aspects were was in the drug recognition exam. During the drug recognition exam, Ms. Giambalvo was, her hearing aid had completely died at that point and constantly in the record you see instances, I can't hear you, I can't understand, I don't know what you're saying, my hearing aid has died. This is after she had specifically requested a sign language interpreter and Mr. Oster Nardini specifically said he would provide one if there were any communication difficulties which there were and he failed to do so. Also, their own policies state that for Miranda warnings that they would, that they cannot ascertain communication. On the DRE, I mean my review and we've all looked at the video of course just presents a different factual scenario than the one that you're talking about. I mean like just for example, the police officer is at one point saying, so again we'll do the 30 seconds, stand again with your feet together and the response from your client is okay, so nine times. So there, I'm having difficulty seeing where the real hindrance was here as opposed to, I understand what everybody was saying but I'm having difficulty understanding where the real hindrance was. Sure, I can give you an example. Sure. If you look at the body cam video at an hour and 49 minutes and 32 seconds, there is interactions regarding a drug recognition test and Officer Nardini is trying to conduct the test and she says what, I can't hear you and then he abandons that portion of the drug recognition exam and says, you know what, it's fine, don't worry about that. But then like at 2-18, there is a detailed conversation about her saying, you know, I just wanted to get home, et cetera and clearly she is trying to explain to him why she didn't do anything wrong and he's saying, well, even if you really had to get home, you still have to stop at the stop sign and I'm reading this at 2 hours 18 minutes, I think, from 5 seconds to 52 seconds and it looks like there's perfect understanding there and that's certainly toward the end. So whether there was understanding or not, for instance, you could have some understanding of a different language, say German, for instance, and someone could communicate with you or gesture to you in German and you could technically respond appropriately or ascertain the gist of maybe what they're saying and that doesn't mean necessarily that you understand. There's testimony both from Officer Nardini that he recognizes that she didn't understand at various points of the interaction there's her own testimony that says she didn't understand critical points of the interaction and we're at the summary judgment stage. The fact that we can have this debate is perfect reason why that there are questions of material fact as to what she understood, how she understood it, whether the video, what it looks like she understood, did she in fact understood or was she just guessing, responding appropriately and maybe thought that he said something else? But the test as the district court found is real hindrance. So in order for you to move on in the case there would have to be a disputed issue of fact as to whether there was a real hindrance. I don't question the fact that there was a hearing disability. That's obvious and undisputed and you had plenty of evidence of that including an expert. But where I'm having trouble with is seeing where the real hindrance was when you look at this from start to finish. Right. So let me give you an example. So based on the communications during the drug recognition exam it was Officer Nardini established that she was impaired by intoxicants. However, as we later found out with the blood draw there were absolutely no intoxicants in her system. And so whether that material aspect of the drug recognition exam was effective or not effective was a material hindrance or not a material hindrance is a disputed fact. And that has borne out by the test being unreliably found that she had intoxicants in her system when the blood test showed otherwise. I think that's a real material hindrance especially at the summary judgment standard that we're at right now where a fact finder can determine whether she completely understood everything based on the video, based on her testimony, based on Officer Nardini's testimony and whether certain aspects whether it's the drug recognition exam, the Miranda warnings, the blood draw consent, the explanation of the charges whether she truly understood or didn't. And I think that those are material aspects that at least should go to a fact finder. They may completely agree upon looking at the video it looks like she understood everything looks like she got whatever she needed for those material aspects and the jury instructions will inform the jury as to what aspects are material through the interactions and they will determine whether based on credibility determinations based on the evidence whether or in fact they did meet the standard or they didn't meet the standard. But let me ask you this, counsel. Hypothetically, if we were to agree with you that this should go to a jury what relief are you ultimately seeking in this case? Like what is the remedy? What is the damages? I'm trying to understand what the end game is here. Sure. So the remedy that would occur here is everyone is entitled to advocate for their civil rights and to the extent that they didn't follow their own policies that they didn't follow what they were supposed to in terms of providing an interpreter for the Miranda warnings and providing the interpreter that was readily accessible for the drug recognition questions a finding in her favor would establish to police departments hey, you know, this is the law, you got to follow the law. I get the idea that you want the legal ruling but usually we're in the business of whether there's relief to be given like either money or something. So I'm just trying to understand like what let's say a judgment is rendered in your client's favor. Yes. It can't just be, you know, police do a better job. That's advisory. So what is the injury that you're trying to get compensation for here? The injury is the violation to her civil rights and as the Supreme Court said in the Uzubugnum case that even in that case it involves a person who was providing religious literature on campus at his college campus and he had already graduated at that point and he didn't have any entitlement to damages. He didn't have injunctive relief because it was moot and what the court said is that for the violation of the civil rights he's entitled to nominal damages. Okay so that would be a nominal damage.  That's all I'm trying to understand that there is something at the end of the rainbow here if you win there is some reward that the district court would be giving you.  Absolutely and I think that, you know, people advocating for their civil rights is important and to the extent that she approves her claim she should be entitled to because I do think that findings in this area does push the law forward. And again, I get the idea as a litigator why you want to bring this case. I'm just trying to understand because it's not like she's going to undo the traffic violations. Those are done. So it's not about that. So there is some sort of nominal damage or nominal reward that she was seeking. Nominal damages, absolutely. Any other questions? Do you want to reserve? Yes, I'll reserve the remainder of my time for rebuttal. Thank you. Very good. Good morning, your honors and may it please the court. My name is Matt Mansfield and I'm here on behalf of the city of Tempe, Arizona and we represent Officer, now Sergeant, Anthony Nardini and the city. I have to kind of disagree wholeheartedly with appellant's counsel. I think this case is all about Mayfield. I think the district court properly predicted that the Ninth Circuit would sort of adopt the interpretation of the ADA in the context of an arrest of the Eleventh Circuit. And I think that's what happened in Mayfield just two months ago. To reverse the district court. But the difference between this case and Mayfield is that in Mayfield, there was no interpreter available. They tried and there wasn't one. Here, they didn't try. So why isn't that a critical difference? Well, I think that is a critical difference. I mean, one thing, we have to look at, first of all, the request. I mean, the request for an interpreter came after the arrest, which is we're after reasonable suspicion for the stop, we're after probable cause has been established for the arrest. So this is a post-arrest request. Although there's also a requirement that an accommodation be made where it's obvious that one is needed. And it was right at the beginning of this encounter that Ms. Chiambovo made clear to the officer that she had a hearing impairment. So I'm not sure that we can say that it wasn't obvious until after the arrest. Well, it's not necessarily after the arrest. You have to take the context of the interaction for the first 20 minutes from when Officer Nardini rolls up to Ms. Chiambovo, who points to her ear right away. It's very clear that she has a hearing impairment. She says she's hard of hearing. She acknowledges that she's wearing her hearing aid, and she didn't request an interpreter at that point. Now, they go through an investigation, and this is a criminal investigation. And so Officer Nardini is trained to be cognizant of people's constitutional rights and their other rights, as well as gathering up information about the suspect and about the crime that has been suspected that's been committed. So by the time she asks this question, he has 20 minutes of experience communicating with her, going through the FSTs. She is speaking in plain English, and other than a few, you know, can you repeat that? I didn't hear that. They're outside. There's traffic noise. Other than a few little hookups, that's near perfect communication because she's responding appropriately to his questions. So then when she asks, his response is that, no, I'm not going to get you an interpreter. It's, sure, I can get you an interpreter. Let me get to the quote. Sure, yeah. I mean, I know quite a bit of sign language. That's why I was signing to you before. So I can sign to you if there's anything you don't understand that you're having difficulty with. Then I can get online and have a digital interpreter also. Ms. Giambalvo's testimony is that, in fact, Officer Nardini wasn't using American Sign Language, that he was gesturing. And, you know, there's a big difference between gesturing and sign language. Effectively, he was speaking to her just in some other language that wasn't actually her language. I also, in that portion of the record that you're referring to, I seem to hear her say, well, he says to her, I mean, I know quite a bit of sign language. That's why I was signing to you before. If there's anything you don't understand you're having difficulty with, then I can also get online and have a digital interpreter also. Okay, fair. She seems to begin to say, no, but I'm... And then the encounter goes on. So, you know, at that point, I'm not sure that the request for an interpreter is really being respected. And I guess, you know, I read that as if she had mentioned it again or said anything else about an interpreter or talked about really having difficulty understanding the interaction. I mean, this interaction goes on now after that point for another hour and a half. And you're just watching the video. I mean, it's almost, at one point she's commenting about the music being played in the DUI van. She's laughing and joking with people. She's not just communicating. You know, this is really the distinction between Mayfield in this case. Mayfield talked about how the plaintiff wasn't wearing a hearing aid that helped with the communication. Here, Gianvalo is wearing a hearing aid that her own audiologist says renders her speech understanding excellent. So I think what Nardini's questioning is... Oh, excellent with amplification. With amplification, that's the hearing aid. And she's wearing the hearing aid. The battery in the hearing aid does not die until an hour and 20 minutes into the interaction after the FSTs, after the arrest, after the blood draw, after the DREs were stopped because the hearing aid died. And she expressed that differently. Part of your point, I take it, is at that point, even if something else maybe could have happened, that we were past the point of real hindrance. We're past the point of real hindrance. And we're also, you know, I think Nardini has the right to question based on his experience communicating with her whether an interpreter is really required or are we still having effective communication because I think that's what Mayfield also adopts and says, look, the 80-day doesn't require an interpreter in this situation if there's otherwise effective communication. And the last part of that question I want to answer is we talked about the availability of this interpreter service, but when you read Nardini's deposition, he does talk about, you can get on it on your phone 24-7. Whether an interpreter in that language is available at that time, that's up to the service. Right, but we don't know because there wasn't... Right. There wasn't an actual... We don't know because I think Nardini rightfully made the determination that they were communicating effectively and that they didn't need an interpreter. And because they communicated that well up to that point, I think he relied on Ms. Giambaldo to say, you know what, things are going south. My battery's getting deader. I think we should get an interpreter. She also voluntarily... This is another note. I mean, the DRE... Again, part of the problem here is that at the point at which she explicitly requests the interpreter, that request isn't respected. It's met with, I speak quite a bit of sign language, which based on her testimony isn't true. I mean, I know you've addressed it. And I understand that. I understand the point. And I think, but that also begs the question from the office perspective, can I get an interpreter? And I want an interpreter, I think are two different questions. I mean, certainly in the context of right to counsel, there's a distinction between those statements. And when the officer hears those statements, I think he was simply explaining, yes, we can get an interpreter if we need one. If you need one, ask for one. And then she didn't ask for one and went on to continue to display effective communication through the two hour and 33 minute interaction. Any other questions? Okay. So, I mean, with that, I would just like to sort of wrap up by saying, you know, the Mayfield Court, you know, I think by overturning the district court's decision here and reversing it, it's tantamount to reversing Mayfield. I mean, setting aside the interpreter issue, you know, when you line these cases up and you look at the efforts that were made to communicate the responses, I mean, I disagree with counsel's sort of argument that, you know, people can get lucky and I can hear you and I can respond to you appropriately, but still not understand. I mean, Ms. Giamballo displayed understanding of what was going on of the proceedings. She had a right to participate. She voluntarily sat for the FST. She voluntarily took, well, she did the blood draw per the admin per se readings, which is kind of a requirement, but she understood those. You know, she voluntarily opted for the DRE. And then when she did express difficulty hearing when she said that my hearing aid is completely dead, I'm only reading your lips, officer says, fine, we're going to skip that test. We're going to stop the DRE. And, you know, there's just, I've looked at this two hours and 33 minutes of tape and I can't find the hindrance. I can't find the piece where she missed out on something by not having the interpreter. And with that, we would ask the court to affirm the district court's decision. Thank you, counsel. Consistent with me. I just want to address some of the comments that were made by counsel in the interactions here. The drug recognition exam was not completely over or the consent forms that were given were not completely over by the time her hearing aid died. The record pours that out completely that it was in the beginning to the middle of the drug recognition exam where she says it completely died. And then the 20 minutes before that, she keeps on saying it's dying, it's going in and out, it's dying, it's going in. And so the fact that said that everything was over by the time that it died is just not supported by the record. And also too, I think the fact that we are going back and forth about, well, if Ms. Giambava was saying, I didn't understand these specific interactions and I think at trial, you could show her the video. Okay, we're going to go to here. What didn't you understand? What did you think was going on here? In your testimony, you said you didn't understand this interaction. But here, there's questions about credibility. There's questions about whether, in fact, she did or did not understand the material aspects of this. And I think that's the very reason why we need why summary judgment is not appropriate here. And Your Honor, you brought up a really good point about respecting the request of Ms. Giambalvo because we have the primary consideration standard, which was discussed in BACS, that when a request is made, the entity is supposed to honor that request unless they can show that an equally effective form of accommodation was provided. Here, I think there's at least a material question of fact of whether this hodgepodge of lip reading and not understanding would have been equally as effective as providing the VRI interpreter that was readily available. This case can be decided and harmonized with Mayfield because I think whether there's a material hindrance or not a material hindrance and whether there was effective communication or not effective communication is inherently a question of fact. Now, if Ms. Giambalvo in her deposition said, you know what, you're right, I understood everything. The video supports that. I don't know what else to say. Of course, in those cases, you could grant summary judgment. But she's disputing that she understood. Her audiologist says that when her hearing aid dies, she can't discriminate speech. We have an expert that talks about the communication difficulties and why she did what she did and why it may look like she's understanding. But really, she may not be. And I think that these are all really critical and inherent questions that are really important for the fact finder to determine. And I think that that's why this court should remand for further proceedings. And it may be that the jury finds against Ms. Giambalvo and it may be that they find for her. But I think she should at least have that opportunity. So, counsel, what is the significance of in Mayfield, if I remember the facts of that case correctly, request was made for the sign language interpreter. Yes. But there wasn't one available. Right, so they actually... What's the significance? Does that have any meaning in this case? Yes, I think it goes to the exigency. Because obviously, there are certain situations like if they're stopping an assault between two people and one's deaf, they're not gonna say, hold on, hold on, let me get the interpreter for you right now. No, I think when they tried to get a virtual interpreter and one was just simply not available, and the only other option was to get an in-person interpreter, I think that raises the reasonableness and the exigency. Because if it's an undue burden to provide an interpreter, or it's just simply not reasonable under the circumstances, you know, there's an out for police officers to not have to provide that accommodation. But here, scene was completely secure. There was no issues. There wasn't, they took them to the processing facility where the police officers are. They could have easily just took out the phone, connected to it. I see we're having some difficulties. And, you know, I told you that if we were having difficulties, I would provide the interpreter. I mean, what is Ms. Giambalvo supposed to do? There's a differential of power here. She requested the interpreter. They said, if you're having problems communicating, we'll give you one. And they wind up not giving anyone, you know, whether she should have continuously requested after that. I mean, obviously, one could understand if someone made a request and they're still not providing it, then, you know, there's a problem there. So I think here there is a distinction and it goes to exigency. And here, I just don't think there's really any exigency or any unreasonableness of him taking out his phone and connecting to the interpreter. So with that, I respectfully ask that you reverse and let this go to a fact finder. Thank you. All right. Thank you, counsel. Again, thank you both for your briefing argument in a very interesting case. This matter is submitted and we are adjourned for the day. Thank you, Your Honor. All rise.
judges: OWENS, BENNETT, THOMAS